Filed 10/11/23  In re S.G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re S.G., et al., Persons Coming Under the Juvenile Court Law. | |
| | D082068 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. NJ15714A-B) |
| Plaintiff and Respondent, | |
| v. | |
| S.E.G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Nadia Keilani, Judge.  Conditionally reversed with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Evangelina Woo, Senior Deputy County Counsel, for Plaintiff and Respondent.

S.E.G. (Mother) appeals from the juvenile court's orders terminating her parental rights as to her daughters, S.G. and P.G. (collectively, the children. (Welf. & Inst. Code, § 366.26.)[1] Her sole contention on appeal is that the San Diego County Health and Human Services Agency (Agency) failed to make proper initial inquiries of extended family members as required by the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and section 224.2. Specifically, Mother argues that while the Agency inquired of paternal and maternal grandparents, its questions were improperly focused on tribal enrollment rather than Indian ancestry. The Agency contends its initial inquiry of the grandparents was sufficient. Mother also argues the Agency failed to make any ICWA inquiry of available paternal and maternal aunts and uncles. The Agency concedes this issue. Thus, the Agency agrees that its initial ICWA inquiry was deficient and that a conditional reversal with a limited remand is appropriate in this case. We conditionally reverse the orders and remand for the limited purpose of ensuring compliance with ICWA and section 224.2.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On January 22, 2021, law enforcement responded to a report of child neglect and found the children with the children's father, D.S. (Father)[3] and his friend in a motel room with fentanyl, multiple burned pieces of foil, pipes,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Because Mother's challenge on appeal is limited to ICWA compliance, we limit our recitation of the facts and procedural history to those relevant to that issue.

[3] The court also terminated Father's parental rights. Father is not a party to this appeal.

heroin, and multiple used fentanyl "baggies," all within reach of the children. Officers arrested Father for drug possession and child endangerment. Mother's whereabouts were unknown.

The Agency filed dependency petitions on behalf of the children under section 300, subdivision (b).

In the beginning of the proceedings, Father denied having any Indian heritage or affiliation with an Indian tribe. Mother was later found in federal custody awaiting trial on drug charges. She denied any Indian heritage.

During the course of its investigation, the Agency asked the children's paternal and maternal grandparents questions about potential Indian affiliation. They each denied knowing any family members who were enrolled in a tribe, lived on a reservation, received financial, medical, or educational assistance from a tribe, or spoke a Native American language.

The record also shows the Agency spoke with M.R. and A.R., who are described as maternal grandfather's nephews, which would make them the children's cousins. There is no indication the Agency asked them whether the children are or may be Indian children.

Additionally, the Agency had contact with or had contact information for the children's various aunts and uncle: (1) paternal aunt C.K.; (2) paternal uncle A.K.; (3) maternal uncle G.Ga.; (4) maternal aunt Andrea Amb.; (5) maternal aunt Andrea Ak.; (6) maternal uncle Greg Ak.; and (7) aunt Andrea An. The Agency did not conduct any ICWA inquiry of these aunts or uncles.

At various hearings throughout the proceedings, the court found that ICWA did not apply. It again found that ICWA did not apply at the section 366.26 hearing. Mother appealed from these orders.

3

Mother argues the Agency failed to conduct proper initial inquiries of extended family members under section 224.2, subdivision (b).  As the Agency concedes, we conclude it failed to comply with its initial ICWA inquiry obligations and substantial evidence therefore does not support the juvenile court's ICWA finding.  As such, we conditionally reverse the court's orders and remand for the limited purpose of ensuring ICWA compliance.

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  Under California law adopted pursuant to ICWA, the juvenile court and the Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W., supra*, at p. 9.)  An " 'Indian child' " is defined under California law in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); accord § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings."  (*Id.* at p. 1052.)  First, from the Agency's initial contact with a minor and her family, the statute imposes a duty of initial inquiry, which includes asking the reporting party and others whether the child may be an Indian child.  (§ 224.2.)  "Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and

4

shall make that inquiry as soon as practicable.' ([§ 224.2], subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S., supra*, 46 Cal.App.5th at p. 1052.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S., supra*, 46 Cal.App.5th at p. 1051.)  However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied.  (*Ibid.*)

Here, the Agency concedes it should have conducted an ICWA inquiry of the children's cousins, M.R. and A.R.  It also concedes it should have made an ICWA inquiry of the first four aunts/uncles listed above:  (1) paternal aunt C.K; (2) paternal uncle A.K.; (3) maternal uncle G.Ga.; and (4) maternal aunt Andrea Amb.  As for the remaining aunts/uncles, the Agency contends maternal aunt Andrea Ak. may be the same person as maternal aunt Andrea Amb. because they appear to have the same phone number and be married to an individual named "Greg".  Aunt Andrea An. may also be the same person. On remand, the Agency should confirm the identities of these individuals and their relationships to the children, and conduct proper ICWA inquiries if they do qualify as extended family members.

Regarding paternal and maternal grandparents, Mother contends the Agency's inquiry was insufficient because it asked about enrollment in a tribe, and enrollment is not definitive of tribal membership.  She argues the Agency's questions were not dispositive of ICWA because tribes define their own membership criteria.  (*In re J.M.* (2012) 206 Cal.App.4th 375, 382.) According to Mother, the Agency should have instead inquired about Indian ancestry.  The Agency asserts its ICWA inquiry was sufficient.

Section 224.2, subdivision (b) requires that the Agency ask extended family members "whether the child is, or may be an Indian child." An Indian child is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe . . . ." (25 U.S.C. § 1903(4); accord § 224.1, subd. (a) [adopting the federal definition].) The Agency may have asked pointed questions to elicit information that might indicate membership or be relevant to a tribe's membership criteria. For instance, there is a reason to believe a child is an Indian child if there is information that indicates the child or the child's parents reside on a reservation. (§ 224.2, subds. (d)(2) and (e)(1).) And the Agency asked the grandparents whether any family members lived on a reservation. However, there is no requirement that the Agency ask specific questions or inquire specifically about Indian "ancestry." Nonetheless, on remand the Agency should ask the grandparents and all other individuals who qualify as extended family members the broad question of whether the children are or may be Indian children. (See *In re S.S.* (2023) 90 Cal.App.5th 694, 703 [explaining the slight effort it would take for the Agency to ask "[m]ight this be an Indian child?"].)

Given the importance of expediency and need for finality, we encourage the parties to stipulate to immediate issuance of the remittitur in this case. (Cal. Rules of Court, rule 8.272(c)(1).)

## DISPOSITION

The orders terminating parental rights are conditionally reversed and the matter is remanded to the juvenile court with directions that, within 30 days of the remittitur, the Agency must file a report demonstrating its compliance with the initial inquiry provisions of section 224.2, subdivision (b) consistent with this

6

opinion. Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that the children are Indian children, the orders terminating parental rights shall be reinstated by the juvenile court. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that the children are Indian children, the court shall proceed accordingly.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

CASTILLO, J.